Hon. Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| RANDALL STEVENS<br><br>        Plaintiff,<br><br>   v.<br><br>PIERCE COUNTY, NAPHCARE INC. and, individually, Deputies COLBY EDWARDS, GREGGORY MARTY, and BRENT TULLOCH, and Jail Defendants WENDY BATCHELOR, MIGUEL BALDERRAMA, ASHLEY CHALK, JAMES GITHUI, DANIELLE SEYMOUR, ROBERT WARGACKI, Medical Nurse DOE 1, and Defendants DOE 2-8.<br><br>        Defendants. | NO.  3:22-cv-05862<br><br>AMENDED COMPLAINT FOR DAMAGES<br><br>42 U.S.C. §§ 1983, 12131 et seq., and SUPPLEMENTAL STATE CLAIMS<br><br>DEMAND FOR JURY TRIAL |

## I.   <u>INTRODUCTION</u>

1.      Randy Stevens is an accomplished aerospace machinist and engineer.  The fifty-five-year-old Mr. Stevens was attacked by at least twelve law enforcement officers ("LEOs") for more than seven minutes after a slow speed pursuit which ended in Mr. Stevens' backyard.  Mr.

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **1** of **29**

Stevens was home, unarmed, wearing shorts and sandals, his car disabled, and absolutely willing to comply with law enforcement until the beating began.

2.     Mr. Stevens, having seen the then-recent video footage of George Floyd being murdered by police, was apprehensive and slow to respond to the commands screamed at him from behind pointed guns.  Mr. Stevens posed no threat to law enforcement or the public.  Nonetheless, Stevens was electrocuted multiple times, pepper sprayed, kicked, punched, dragged to a second location, and beaten some more.

3.     The last LEO to join the beating, Deputy Brent Tulloch, struck Mr. Stevens in the ankle with his heavy steel flashlight until it fractured in a spiral shape.  Because the jail medical contractor, Naphcare, provides only perfunctory medical care and falsifies records to avoid expensive orthopedic treatment and maintain its 'rock bottom' jail medical prices, the fibula fractures have calcified in such a manner that Mr. Stevens will never have a normal gait or return to his life's work.  Mr. Stevens now suffers from intense nerve pain and psychological injury.

## II.   **PARTIES**

4.     Plaintiff Randall Stevens is a citizen of Pierce County, domiciled at all relevant times in Pierce County.

5.     All defendants are named in their individual capacities unless otherwise noted.

6.     Pierce County is a political subdivision of the State of Washington, liable under both state tort law and federal law pursuant to Monell v. Department of Social Services, 436 US 658 (1978).

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **2** of 29

7.      NaphCare Inc. ("NaphCare") is a corporation providing medical services inside the jail, also liable under <u>Monell</u> for its policy of seeking profits to the detriment of standards of care. Naphcare has been named in hundreds of lawsuits for deliberate indifference and negligence.

8.      Defendant Medical Nurse DOE 1 was at all relevant times an employee of the medical department withing the jail, likely employed by Defendant Naphcare.  The interrogatory requesting DOE 1's identity has a due date of April 3, 2023.

9.      Defendants DOE 2-8 are jail staff, and medical staff, whose identities have not yet been matched to the specific injuries they inflicted or to which they were deliberately indifferent. Among Defendants DOE are also Sheriff's Department and Jail supervisors.

10.     Defendant Wendy Batchelor was at all relevant times a nurse practitioner working inside the jail as an employee of Naphcare.

11.     Defendant Miguel Balderrama was at all relevant times a medical doctor and the facility medical director working inside the jail as an employee of Naphcare or the County.

12.     Defendant Ashley Valencia Chalk was at all relevant times a registered nurse working inside the jail as an employee of Naphcare.

13.     Defendant Colby Edwards is a Pierce County Sheriff's Deputy.

14.     Defendant James Githui was at all relevant times a registered nurse working inside the jail as an employee of Naphcare.

15.     Defendant Greggory Marty is a Pierce County Sheriff's Deputy.

16.     Danielle Seymour was at all relevant times a registered nurse working inside the jail as an employee of Naphcare.

17.     Defendant Brent Tulloch is a Pierce County Sherriff's Deputy.

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

18.     Defendant Robert Wargacki was at all relevant times a registered nurse working inside the jail as an employee of Naphcare.

### III.  JURISDICTION AND VENUE

19.     Jurisdiction is established by 28 USC §§ 1331, 1343 and 2201 for claims alleged under 42 USC §1983 and 12131 et seq.

20.     Jurisdiction is established by 28 USC § 1367 and exhaustion of appropriate state administrative remedies for all supplemental claims.

21.     Venue is proper in the Western District under 28 USC §1391 as most or all defendants are domiciled in the district, and all claims arose in Pierce County.

22.     All administrative remedies were exhausted by service of a tort claim on Pierce County on July 27, 2022 and Addendum served September 7, 2022 and passage of greater than 60 days thereafter.

23.     Jurisdiction over the medical negligence claims is established by satisfaction of the RCW 7.70.100(1) notice and grace period, notice of which was served on all such parties July 27, 2022.

24.     All civil rights claims against the County and Naphcare are pursuant to Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

### IV.  FACTS

25.     This case arose during a lawful arrest made in a grossly unlawful and brutal manner, resulting in a mere misdemeanor plea agreement.  At least twelve law enforcement officers ("LEOs") from three jurisdictions used force against Mr. Stevens over the course of approximately seven minutes.

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

26.     At least 20 LEOs were on site or en route.  Every LEO named herein either participated directly in the unlawful action or failed to intervene to prevent it.  After the beating, Mr. Stevens received no care for his fractured fibula while in jail, which allowed a boney bridge to grow in a pool of blood between his tibia and fibula, entrapping a nerve and causing permanent injury.

***Excessive Force Facts:***

27.     In a 3-phase attack, Mr. Stevens was tased several times, pepper-sprayed twice, kicked, punched, choked, crushed, and finally had his fibula fractured by a heavy flashlight.  At no time did any officer attempt to deescalate the situation, and at no time did Mr. Stevens actively resist.

28.     At all times, the LEOs were aware that they were on Mr. Stevens' property -25017 112th St. E. Buckley, WA- and that Stevens posed no danger to themselves or the public.  The claims for physical injury arise from Phase 3 of the attack.

29.     On August 13, 2020, at approximately 22:19:07, Mr. Stevens got his vehicle stuck in a field on his four-acre property behind his house where Deputy Ara Steben observed "it could go no further."  Deputy Steben had chased Mr. Stevens there very slowly as Stevens' vehicle lacked a right front tire for more than half the pursuit and, to quote Deputy Steben, "sparks were beginning to fly from the wheel."

30.     In Phase 1 of the arrest, beginning approximately 22:20:17, Deputy Steben immediately drew his pistol and aimed it at Mr. Stevens' head through the open driver's door while screaming "get the f*ck out of the car!"  Buckley Police Officer, Bennon VanHoof, immediately

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

joined Steben, also with gun drawn, simultaneously screaming confusing commands at the top of his lungs.

31.     By 22:20:40, only 23 seconds after approaching the terrified driver, Steben radioed "uncoop[erative]" then sixteen seconds later, "trying to get him out of the car…fighting with one, won't get out of the car."  The "fighting" thus far consisted of two LEOs punching and grabbing one man sitting in a disabled car with his hands on the wheel in his own backyard.

32.     Steben then shot Mr. Stevens in the neck with a taser and moved to the passenger side, where he smashed out the car window, sending shards of glass flying across the interior.  Mr. Stevens convulsed in excruciating pain but was able to take one hand off the wheel long enough to pull the taser wires out (the probes remained embedded in his neck), then put his hand right back on the wheel.

33.     Having seen the still-recent video of George Floyd being murdered by police, Mr. Stevens remained frozen with fear.   To Mr. Stevens, keeping his hands gripped to the wheel -where they could be seen by all LEOs- was a feat of confused compliance and self-preservation.

34.     The second taser shot burned as the prongs sank into his chest, but Mr. Stevens continued to grip the wheel in convulsion and terror, unable to comprehend the screaming coming from both sides.  One of the arriving LEOs yelled, "oh sh*t, he's resistant to tasers!"  This triggered an instant escalation of the attack.

35.     VanHoof punched Mr. Stevens in the left jaw while Steben smashed his knuckles with a flashlight.  When Mr. Stevens was shot in the face with pepper ("OC") spray, he finally released his grip on the wheel to rub his eyes.

FAC

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **6** of 29

36.     The OC spray went directly into Mr. Stevens' mouth, nose, and eyes, causing blindness and a feeling of suffocation as well as excruciating pain.  At this point, Mr. Stevens was completely helpless and at the LEOs' mercy.  There would be no mercy.

37.     The arrest transitioned into Phase 2 at approximately 22:22:14, as VanHoof put Mr. Stevens' left arm in an arm-bar while Deputy Greggory Marty continued to empty his entire pepper spray can into Stevens' face.  Crumbling into a fetal position on the ground outside the driver's side door, Mr. Stevens' left hand was immediately placed in handcuffs.

38.     Phase 2 began with Mr. Stevens face-down in prairie grass under a dense tree. During this phase, Deputies Marty and Steben, Bonney Lake Officers Burnham, Ebey, Gage, Marty (relation, if any, to Deputy Marty unknown), and VanHoof all applied force to nearly every square inch of Mr. Stevens' body as he lay face-down on the ground.

39.     Mr. Stevens was kicked and punched from every direction to every part of his body, while being crushed, smothered, suffocated, and having his face repeatedly compressed into the ground.  Discovery will clarify which individuals are responsible for which injuries beyond those pleaded in this initial Complaint.

40.     With the cumulative weight of all the bodies pressing down, Mr. Stevens' right arm remained pinned beneath his body.  The LEOs were beating Mr. Stevens and crushing him under approximately a thousand pounds of their body weight while paradoxically demanding the right arm which Stevens could not remove because of the crushing weight.

41.     At several intervals during Phase 2, Mr. Stevens felt his lungs unable to inflate, which caused involuntary muscle contractions to create space for the necessary oxygen.  The LEOs

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

used Mr. Stevens' passive resistance to justify further violence, accusing him of drug-induced "superhuman" strength.

42.    Mr. Stevens is an aircraft parts machinist and engineer.  He does not partake in drug use, as his toxicology results from that fateful day clearly show.  As Officer Burson explained in his incident report, Mr. Stevens used only "static resistance."  This he did reflexively to stay breathing and alive.

43.    After approximately five minutes of crushing and beating Mr. Stevens, Phase 3 began with the arrival of Deputies Edwards and Smith, as well as Bonney Lake Officers Burson, Ebey and Gage.  As the beating continued, Defendant Edwards immediately set about shocking Mr. Stevens in the legs with a stun gun rather than merely assisting to cuff the right hand, as he eventually got around to doing.

44.    Edwards is sued for this malicious electrocution.  The officers involved in Phase 3 decided that there was not ample room next to the car, so they dragged Mr. Stevens to another location and resumed the beating.

45.    No effort had been made to deescalate because the LEOs were extra-judicially punishing Mr. Stevens rather than apprehending him.  Phase 3 was punctuated by the act resulting in the most severe of Mr. Stevens' physical injuries.

46.    When Defendant Deputy Tulloch arrived, there was no part of Mr. Stevens uncovered by violent LEOs, except the legs. At 22:25:22, Tulloch radioed to "slow inc[oming officers because] enough here."  Tulloch was unconcerned about whether Mr. Stevens would be taken into custody, and instead joined the punishment.

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

47.      Tulloch initially controlled Mr. Stevens' legs.  At 22:27:50, Tulloch radioed that Mr. Stevens was "complaining he can't breath[e] (*sic*) but still actively fighting."  Although Mr. Stevens was undisputedly face-down and covered by LEOs, Deputy Tulloch later reported that Stevens had been kicking him.

48.      Tulloch pulled out his police-issued steel Streamlight flashlight, weighing 1.7 pounds, and proceeded to smack Mr. Stevens' leg just above his left ankle joint until the fibula fractured twice in a spiral shape.  Tulloch does not carry the standard issue ASP 21 steel baton, which weighs only 16.3 ounces.

49.      Such force was considered "Deadly Force" under Pierce County Sheriff Policy 300.1.1.  Such unreasonable use of an impact weapon was permissible under Policy 308.2 against even the merely "resistive suspect."

50.      Defendant Marty, having remained throughout all three phases of the assault, took the opportunity to kick Mr. Stevens repeatedly in the ribs.  Pending photographic montage discovery, Marty is also likely responsible for the gash on top of Mr. Stevens' head.

51.      When the seven-minute beating concluded, Edwards forced Mr. Stevens to walk on his broken ankle over to the ambulance.  The ambulance had been called during the beating, as the LEOs were as unsure as Mr. Stevens about whether he would be hospitalized (or dead) as a result.

***Medical Facts:***

52.      A deputy took Mr. Stevens to the Bonney Lake Hospital Emergency Department for treatment of his lacerations and broken leg, and an x-ray of the fibula fracture, after which he was discharged to jail with a splint and crutches.  Pierce County Jail staff confiscated the splint and crutches provided by the Bonney Lake Emergency Department after the beating.

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **9** of 29

53.     The x-ray showed a clear spiral shaped fracture of the fibula:



54.     According to the fax date stamp, on August 14, 2020 at 10:33 AM, the Bonney Lake emergency department faxed the fibula fracture records to the jail, containing the following language:

IMPRESSION: Acute comminuted minimally displaced fracture involving the distal fibula diaphysis above the ankle mortise. ....... Providers: To speak with a TRA radiologist, call (253)761-4200.

55.     According to the date and time stamp, on August 14, 2020 at 3:45 PM, Defendant Doctor Balderrama entered a SOAP note containing the following language:

pt was also found to have a left ankle fracture : comminuted fracture of the distal fibula diaphysis above the ankle mortise with min displacement ER did not rec ortho f/u due to the nature of his fracture

56.     Dr. Balderrama added the clause, "**ER did not rec[ommend] ortho**" despite the final pages of the Bonney Lake Emergency Department fax containing an "Instructions" section that states, to the contrary, as follows:

7.  You have broken left ankle - Keep splint on at all times - do not weight bear.SEE orthopedic service and get a cast.

FAC

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

57.     The handwritten dash next to Item 7 was written by Defendant Miguel Balderrama who initialed the page as follows:



58.     Thus, either Balderrama, Batchelor, or both defendants, knew that the Emergency Department had recommended an orthopedic consultation, ignored the recommendation, and went even further by intentionally covering up the recommendation to save money.

59.     This injury should have been immediately immobilized and treated by a specialist to prevent blood from communicating between the injured periosteum of each bone, which acted as a 'scaffold' for calcium to grow.

60.     Mr. Stevens bailed out within a few days and purchased his own splint and crutches. The interim five days in custody were extremely painful and ~~may have~~ contributed to Mr. Stevens' permanent injuries.  Experts have been retained.

61.      Because of an incorrect mailing address entered by the court clerk, Mr. Stevens missed his omnibus hearing and his bail was revoked.  Mr. Stevens was returned to jail on or about November 20, 2020, at which time his crutches and splint were again confiscated by Defendants DOE.

FAC

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

62.     In 2015, Defendant Naphcare was awarded a 'no bid' contract for medical services within the jail.  On information and belief, all jail medical staff were, at all relevant times, Naphcare employees, with the possible exception of FMD Balderrama.

63.     After Defendant DOE confiscated Mr. Stevens' clothes, ankle brace, and crutches, Mr. Stevens was escorted to the medical intake.  Mr. Stevens notified Defendant Nurse James Githui that his ankle was fractured, severely swollen, and very painful.  Githui replied, "I do not see any issue" and left the relevant checkbox empty:

☐ Impaired mobility from casts, bandages, injury, body deformity

64.     Defendant Githui absurdly noted Mr. Stevens had no "[r]ecent medical hospitalizations" and no "[i]mpaired mobility from casts, bandages, injury, [or] bodily deformity" despite his massively swollen and freshly broken ankle.  Githui also falsely noted "Grossly normal strength and functions of all extremities" and "Gait normal with no limitations for ADL's" and "No injuries…on extremities," and left blank the section for "Abnormal findings" (pictured below).



**MUSCULOSKELETAL/SKIN**

☑ Grossly normal strength and function of all extremities

STEVENS, RANDALL DOUGLAS 2393

☑ Gait normal with no limitations for ADL's

☑ No injuries or infections on extremities

Abnormal findings:

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

65.     At the bottom of his intake form, Githui falsely stated that Mr. Stevens "denies any medical hx" despite having been told the opposite and despite the jail being in possession of the Bonney Lake Emergency Department records.

Additional Comments:

Pt denies any medical hx, denies abuse of ETOH/drugs, denies SI, VSS, in NAD.98321

66.     Immediately after the November 20, 2020 intake, Mr. Stevens repeatedly requested assistance with his broken ankle via oral pleas and electronic kites, none of which were apparently memorialized or produced in response to applicable public records requests.

67.     On February 17, 2021, Defendant Wendy Batchelor entered a 'SOAP' note in which she correctly observed "palpable deformity along the fibula," and falsely claimed that Mr. Stevens was "unwilling to provide previous medical records r/t ankle" despite Mr. Stevens having twice executed a release of his "entire medical record" to the jail (on both August 14th and November 20, 2020.  Bates 100124, 100259).

s. Pt unwilling to provide previous medical records r/t ankle.



NaphCare, Inc.
910 Tacoma Ave. S
Suite 4000
Tacoma, WA 98402

AUTHORIZATION FOR ROI - Completed by: Alicia Thompson RN on 8/14/2020

Patient: STEVENS, RANDALL DOUGLAS            #: 239380 (2020325013)

FAC

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com



**AUTHORIZATION FOR ROI** - Completed by: James Githui RN on 11/20/2020

Patient: STEVENS, RANDALL DOUGLAS          #: 239380 (2020325013)          Lang:

68.     Furthermore, Batchelor's statement disregarded the fact that the jail had already received the Bonney Lake Emergency Department records back on August 14, 2020.  Bates 100177. Batchelor then falsely claimed that Mr. Stevens refused prescriptions for pain management, a bottom bunk, and "low tier" housing (Mr. Stevens only ever refused addictive medication).  Bates 100265.

69.     These and all false statements by Naphcare employees, including FMD Balderrama, were made to effectuate the policy, practice, and custom inherent in a for-profit corporation providing medical services; namely, profit over care.

70.     After approximately 30 days in Old Jail, Mr. Stevens was transferred to New Jail. Mr. Stevens was forced to make several trips back to Old Jail because that is where the medical clinic is located.  After much begging, Batchelor finally approved a wheelchair for this purpose.

71.     At the February 17th morning exam, Defendant Batchelor noted, "Agreeable to start with xray today" and ordered the scan.  Mr. Stevens was escorted back to his cell and, the following day, was escorted to the x-ray area next to the dental clinic but no x-ray was offered.

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **14** of **29**

72.     On February 18th, Defendant Seymour entered the false statement, "Pt refused XRAY L foot" in the chart.  Bates 100266.  Seymour placed a falsified Release of Responsibility in the chart without Mr. Stevens' signature but with hers and those of two Defendants DOE.  Bates 100267.



**RELEASE OF RESPONSIBILITY - :**

PST

Patient: STEVENS, RANDALL DOUGLAS
DOB: ████████ (Age=55)
Housing: NEWJ-2C-2C62
Status: ACTIVE

I have hereby clearly expressed or indicated a decisio

Pt refused XRAY L foot.

73.     The chart contains many unexplained and falsified refusals of care and medication, not signed by Mr. Stevens.  These are further evidence of Naphcare's policy of profit over care.

74.     On February 24, 2021, the jail received the Radiology Report from an x-ray of that date.  Dr. Kuehn clearly noted "Bridging callous [*sic*] between the tibia/fibula. … Degenerative changes."  Bates 100270.  Defendant Balderrama initialed the report, "MB," but did nothing to avert the callus formation.  Nor did Defendant Batchelor, who had ordered the x-ray.

75.     On March 4, 2021, Defendant Batchelor entered another chart note falsely claiming that Mr. Stevens refused care and falsely attributing to Mr. Stevens a statement that he "has own ortho MD appt."  Bates 100271.  Defendant Wargacki also stated that Mr. Stevens "does not want

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **15** of **29**

any meds, does not want to see MD or come to clinic.  [Inmate] reports has own ortho MD appt."  As if a prisoner could step out of jail for an orthopedic consult at will.

76.      Also on March 4th, Medical Nurse DOE 1 noted "X-ray shows no abnormality," which is patently false.  Bates Stamp 100048.  This is consistent with Naphcare's policy, practice, and custom of leaving medical images in the possession of subcontractors, and only entering obtuse characterizations of said images in the prisoner's chart.  This saves money by plausibly denying expensive care.

77.      On March 21, 2021, Defendant Chalk entered a chart note falsely portraying the very frustrated and tortured Mr. Stevens as "hostile and refused to provide any information regarding past treatments and referrals" despite having his entire medical history on file.  Bates 100271.

78.      Defendant Chalk then falsely stated, "xray shows no acute fracture….   Mild swelling….    Ambulates independently…up and down stairs without difficulty.   Inmate has previously and currently refuses receiving pain relievers and further treatment for left ankle."  Chalk made no further plan or referral.

79.      On April 9, 2020, Defendant Batchelor again entered false statements in a SOAP note.  Batchelor stated that, when Mr. Stevens was previously released on August 18, 2020, his "splint was in place."  Bates 100284.  This is patently false because the splint was confiscated and never returned.

80.      In the same note, Batchelor also falsely stated that "P[atient] refused wheelchair for long distances, and or lower tier/bunk as it appears weak."  Mr. Stevens in fact requested a wheelchair many times before he was permitted one (as the jail administrative record shows) for court appearances and the trek to the Old Jail for medical visits.

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **16** of **29**

81.     Finally, on the 10th of April, Orthopedic Physician Ricardo Colberg reviewed the x-ray and chart, observing the "distal fibula shaft fracture with significant cal[lus] formation as well as calcification of the syndesmosis.  This fracture is near the intersection of the superficial saphenous nerve.  He complains of swelling in the leg and numbness of his 3rd-5th toes, which a[re] symptoms of nerve injury to the superficial saphenous nerve.  Unfortunately, there is no viable surgery to correct this."  Bates 100285.

82.     Prior to the injury maturing into a permanent bone bridge, Mr. Stevens could have averted permanent injury by orthopedic treatment.  This would have prevented the bony bridge from entrapping the saphenous nerve forever.

83.     On May 26, 2021, a follow up x-ray report noted "bony bridging between the distal tibia and fibula. …Chronic deformity of distal tibia and fibula unchanged."  Bates 100315. Defendant Batchelor reviewed and signed both x-ray reports and still did not refer Mr. Stevens to a specialist or even physical therapy.

84.     Mr. Stevens' ankle remained badly swollen and painful throughout his 328-day pretrial detention.  Mr. Stevens was not provided a copy of the Emergency Department records until after his second booking, when he learned of them through kiosk kiting in the jail.  Because the fibula is not a weight-bearing bone, Mr. Stevens believed he could simply 'tough it out' while wearing a splint during his cursory release and, later, upon his return to jail, without even a splint.

85.     Defendants DOE housed Mr. Stevens in a unit that required painfully transcending a staircase sometimes as much as seven times per day to accomplish major life activities such as eating meals, picking up medications, attending sick call, and appearing in court.

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **17** of **29**

86.     On October 15, 2021, Mr. Stevens pled to misdemeanor charges with time served. Mr. Stevens is now partially disabled with osteoarthritis, permanently wears an ankle brace, often needs a walking cane, and cannot return to his life's work or enjoy physical recreation.

87.     Mr. Stevens felt the pain of Marty's kicks for many months to come.  Mr. Stevens cannot walk normally or stand for long periods thanks to Tulloch's flashlight, which caused calcium bridging the fibula and tibia ("osteophyte"), nerve damage, osteoarthritis, and related conditions. Mr. Stevens' podiatrist cannot surgically remove the calcium bridge without permanently damaging important nerves, and the medication in lieu of surgery has life altering side effects.

88.     The cumulative effect of being gang-beaten by the defendants has left Mr. Stevens with PTSD, anxiety, insomnia and related conditions, as well as dependency on counseling to cope. Defendants Edwards, Marty, and Tulloch acted maliciously and with reckless disregard for Mr. Stevens' constitutional rights.

89.     Nor is Mr. Stevens' work experience translatable to any other similarly compensable occupation.  The Sheriff's Department never investigated this 12-man, seven-minute assault until Mr. Stevens filed an internal affairs complaint.   Internal Affairs Sergeant, Jennifer Eldridge, unsuccessfully requested to interview Mr. Stevens without his counsel present.

## V.  FEDERAL CAUSES OF ACTION

### FIRST CLAIM

**EXCESSIVE FORCE in violation of the 4th Amendment (against Defendants Tulloch and Pierce County).**

90.     Defendant Tulloch knew Mr. Stevens had driven with no tire and sparks flying; that his vehicle had come to rest at his own home, completely disabled.  Tulloch knew that 11 other

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

LEOs had already taken turns beating Mr. Stevens for about five minutes, and Stevens' left hand was already in handcuffs.

91.    Tulloch saw several other LEOs already positioned upon Mr. Stevens' body as the latter lay face-down.  Tulloch knew his own participation was unnecessary and that Stevens posed no threat to himself or others.  Tulloch even instructed Dispatch to send no more help.

92.    Tulloch knew that Stevens had offered only static resistance to being beaten. Tulloch knew, as would any reasonable officer, that breaking Mr. Stevens' ankle was a Draconian and disproportionate use of force.

93.    Tulloch knew Mr. Stevens was emotionally disturbed and had neither inflicted nor threatened to inflict any harm upon any other person.  Tulloch participated in moving Mr. Stevens to a second location before resumption of the beatings.

94.    Yet Tulloch nonetheless persisted to forever modify Mr. Stevens' life by severely fracturing his ankle using a steel flashlight that weighs the same as a framing hammer.

95.    Defendant Tulloch is liable for the economic, physical, emotional, and psychological harms he has caused.

96.    Pierce County is also liable because of its policy permitting deputies to bludgeon passive resistors with heavy flashlights.  Pierce County is also liable because its boilerplate Lexipol policy includes no training, guidance, or certification as to the usage of weaponized flashlights, as it does with lighter, less dangerous batons.

97.    Pierce County is further liable for ratifying the prolonged gang-beating of those who passively resist such beatings.  Such unwritten policy is also evidenced by the sheer number of assailants, the deficient internal affairs investigation, and perfunctory 'Blue Teams' use-of-force

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

reviews which serve to cover up and not expose unconstitutional force, and the lack of de-escalation policy.

## SECOND CLAIM

**EXCESSIVE FORCE in violation of the 4th Amendment (against Defendants Marty and Pierce County).**

98.     Defendant Marty knew Mr. Stevens had driven with no tire and sparks flying; that his vehicle had come to rest at his own home, completely disabled.  Marty knew Mr. Stevens' left hand was immediately cuffed and that his right hand was stuck under the weight of his 12 assailants.

99.     Marty arrived early and remained throughout all phases of the seven-minute beating. Having been present the whole time, Marty knew Stevens posed no threat to himself or others. Marty was aware of Mr. Stevens' emotionally disturbed condition.

100.     Marty knew a simple de-escalation would have completed the arrest, but he wanted to punish Mr. Stevens.  Having previously pepper sprayed Mr. Stevens and assisted in subduing him, Marty then began kicking Mr. Stevens in the ribs.

101.     Kicking a man in the ribs after a seven-minute beating during which he offers nothing but static, defensive resistance, is facially unconstitutional.

102.     Marty is liable for the objectively unreasonable kicks to Mr. Stevens' ribs, any other force he administered in Phase 3, and all damages flowing therefrom.  Marty is additionally liable for Mr. Stevens' emotional and psychological damages flowing from the prolonged beating.

103.     Pierce County is liable for ratifying the prolonged gang-beating of those who passively resist such beatings, as described in the First Claim, paragraphs 96 and 97, *supra.*

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **20** of **29**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## THIRD CLAIM

**EXCESSIVE FORCE in violation of the 4th Amendment (against Defendants Edwards and Pierce County)**

104.    Defendant Edwards knew Mr. Stevens had driven with no tire and sparks flying; that his vehicle had come to rest at his own home, completely disabled.  Edwards knew Mr. Stevens' left hand was immediately cuffed and that his right hand was stuck under the weight of his 12 assailants.

105.    Defendant Edwards arrived at the tail end of the beating, in Phase 3.  Edwards knew his participation was unnecessary, and that Mr. Stevens was only offering static resistance to the beating.

106.    Defendant Edwards had no lawful purpose to shock and burn Mr. Stevens' leg with a taser while Mr. Stevens was face-down, covered in LEOs and in the process of being handcuffed. Edwards is liable for the pain and suffering, as well as the psychological harm flowing from the electrocution.

107.    Pierce County is liable for ratifying the prolonged gang-beating of those who passively resist such beatings, as described the First Claim, paragraphs 96 and 97, *supra*.

## FOURTH CLAIM

**FAILURE TO ACCOMMODATE A DISABILITY in violation of Title II of the ADA, 42 USC § 12131 et seq. (against Defendant Pierce County).**

108.     Mr. Stevens was at all relevant times a qualified individual with a disability.  Pierce County is a public entity and the Jail, and all aspects of life in jail, constitute services, programs, and activities of Pierce County.  Additionally, the County is vicariously liable for the acts and omissions of Naphcare and its employees.

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **21** of **29**

109.     Because Mr. Stevens presented to the jail with crutches and splint, and because the jail possessed the records from Bonney Lake Hospital's emergency room, Defendants Batchelor, Chalk, Nurse DOE 1, Defendants DOE, and Seymour were deliberately indifferent to the need for reasonable accommodations.

110.     By confiscating Mr. Stevens' crutches and splint, and by denying and/or delaying use of a wheelchair, Pierce County denied reasonable accommodations.

111.     By housing Mr. Stevens in a cell with a staircase between him and the cafeteria and the medical department, Pierce County denied a reasonable accommodation.

## FIFTH CLAIM

**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS in violation of the Fourteenth Amendment (against Defendants DOE 2-3, Nurse DOE 1, Githui, Batchelor, Balderrama, Chalk, Seymour, and Naphcare)**

112.     Defendant Naphcare, a for-profit Alabama company with a no-bid contract, has a policy, practice, and custom of focusing on profits to the detriment of health care.  The result is systemic deliberate indifference to the medical needs of prisoners all over the nation, spurring many lawsuits in the last decade.

113.     Naphcare's profit-motive also allows it to obtain quantity over quality of jail and prison care contracts, 'swooping in' as it did with Pierce County's "emergency" no-bid replacement of Naphcare's predecessor.

114.     By infringing the constitutional rights of its patients, Naphcare can offer perfunctory jail medical 'care' at rock bottom prices to agencies in desperate need of immediate service.

115.     Naphcare carries out these policies, practices, and customs by, inter alia, falsifying medical records to indicate refusals of care and medications.

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

116.     Naphcare also has a policy, practice, and custom of leaving medical images in the exclusive possession of a subcontractor in a remote location, substituting obtuse written characterization of such images into the prisoner's medical chart.

117.     This affords plausible deniability to the individuals who act, or omit action, in response to the watered-down summaries of the severe images, reinforcing the policy of jail medical services at rock bottom prices.

118.     This policy, practice, and custom is augmented by a tacit agreement with the x-ray company.  Discovery may reveal an express agreement.

119.     Pursuant to Naphcare's policies, practices and customs, the foregoing individual defendants were deliberately indifferent to Mr. Stevens' serious medical needs, as specified in the Facts Section, supra, and for such similar acts and omissions as will be revealed in discovery.

120.     The individual defendants knew or should have known that Mr. Stevens' fibula had recently fractured, that it was healing improperly, and that there was a preventable bone bridge growing between his tibia and fibula, and they intentionally disregarded the same.

121.     All defendants intentionally refused to assess the growing bone bridge between Mr. Stevens' fibula and tibia and intentionally refused to provide appropriate referrals and care.

122.     Beyond merely denying Mr. Stevens an appropriate referral, Defendant Balderrama falsified his SOAP note of August 14, 2020 to prevent expensive orthopedic care.

123.     Defendants Wargacki and Batchelor fabricated the absurd proposition that Stevens, a detainee who would serve nearly one year, had his own arrangement with an orthopedist outside the thick walls of the jail he was forbidden to leave.

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **23** of **29**

124.    Defendants Chalk and Wargacki signed onto these lies in an effort to prevent expensive orthopedic care.

125.    All the foregoing defendants falsified refusals of care.  Defendants DOE also signed their names to falsified refusals and releases.  Because the joinder deadline was set before discovery could be undertaken, the illegible signatures of Defendants DOE have not yet been deciphered.

126.    The deliberate indifference of the foregoing defendants was pursuant to the Naphcare policies and proximately caused Mr. Stevens' fibula fracture to heal improperly, resulting in nerve damage and permanent impairment, and the lost chance at a better outcome.   Economic and emotional damages also flowed from the permanence of the impairment.

## VI.    STATE CAUSES OF ACTION

### SIXTH CLAIM

### NEGLIGENCE (against Pierce County and Defendants Edwards, Marty, Tulloch ~~and Defendants DOE)~~

127.    The foregoing defendants owed duties of reasonable care to Mr. Stevens, including the duty to refrain from directly causing him harm through affirmative acts of misfeasance.

128.    Edwards breached the duty by electrocuting Mr. Stevens for no reason, and by denying Mr. Stevens the opportunity to acquiesce in his own arrest.

129.    Marty breached the duty by kicking Mr. Stevens for no reason, by denying Mr. Stevens the opportunity to acquiesce in his own arrest.

130.    Tulloch breached the duty by breaking Mr. Stevens' leg for no reason, and by denying Mr. Stevens the opportunity to acquiesce in his own arrest.

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

131.     Defendants DOE breached the duty by confiscating and refusing to replace Mr. Stevens' crutches and splint in jail, and by housing Mr. Stevens in a cell necessitating transcendence of a staircase.

132.     Defendant Pierce County is vicariously liable for all foregoing defendants because they were acting within the scope of their employment.

## SEVENTH CLAIM

### COMMON LAW BATTERY (against Defendants Edwards, Marty, Tulloch, and Pierce County).

133.     Defendant Edwards unreasonably, unlawfully, harmfully, and intentionally electrocuted Mr. Stevens.

134.     Defendant Marty unreasonably, unlawfully, harmfully, and intentionally kicked Mr. Stevens.

135.     Defendant Tulloch unreasonably, unlawfully, harmfully, and intentionally fractured Mr. Stevens' fibula with a heavy steel flashlight.

136.     Defendant Pierce County is vicariously liable for all foregoing defendants because they were acting within the scope of their employment.

## EIGHTH CLAIM

### MEDICAL NEGLIGENCE (against Defendants Balderrama, Batchelor, Chalk, Seymour, Wargacki, Naphcare, and the County)

137.     All defendants owed Mr. Stevens a duty consistent with the accepted standard of care pursuant to RCW 7.70.030(1).

FAC

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **25** of **29**

138.    Defendant Balderrama's acts and omissions fell below the standard of care when he deliberately ignored and altered the Emergency Department's assessment, rarely if ever examined Mr. Stevens, and declined to refer Mr. Stevens to an appropriate specialist.

139.    Defendant Batchelor's acts and omissions fell below the standard of care when she ignored medical records, entered false statements into the medical record, declined to treat Mr. Stevens, and declined to refer Mr. Stevens to an appropriate specialist until it was too late to avert the permanent impairment.

140.    Defendants Chalk, Seymour, and Wargacki fell below the standard of care when they falsely attributed refusals of care to Mr. Stevens and omitted treating him and referring him up the chain of command.

141.    The acts and omissions of the foregoing defendants were the proximate cause of Mr. Stevens' permanent impairment or a lost chance at a better outcome.  All other damages also flowed from these torts.

142.    The employers are vicariously liable for the malpractice of their respective employees.

**NINTH CLAIM**

**CORPORATE NEGLIGENCE (against Defendant Naphcare)**

143.    Defendant Naphcare had a duty to competently hire, train, and supervise all its employees under its corporate name.  Naphcare placed profit above care, breaching the foregoing duty.

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

144.     Naphcare's profit over care policy resulted in the individual defendants ignoring and falsifying medical records, denying care, and refusing to involve an orthopedic specialist, all to keep expenses down and profits up.

145.     Naphcare's breach of the foregoing duties proximately caused Mr. Stevens' permanent impairment.

### TENTH CLAIM

### BREACH OF CONTRACT INTENDED TO BENEFIT THIRD PARTIES
### (against Defendant Naphcare)

146.     On June 3, 2016, the County contracted with Defendant Naphcare for jail medical services.  The contract has been renewed annually since.

147.     Although the contract is reprehensibly silent about standard of care, the accepted standard of care is implied by operation of law.

148.     The terms of the contract necessarily require Naphcare to confer services meeting the accepted standard of care upon jail detainees and inmates.

149.     Mr. Stevens was a jail detainee and third-party beneficiary of the contract.  The deliberate indifference and negligence of Naphcare and its employees constituted wanton and reckless breach of the contract.

150.     Mr. Stevens lost the benefit of the bargain and must be monetarily compensated for his expectation interest in emerging from the jail without permanent impairment and pain, without emotional and mental distress, and with the ability to continue in the performance of his life's work, including the wages Mr. Stevens would have earned in the future.

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **27** of **29**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### VII.      RELIEF SOUGHT

151.    Mr. Stevens hereby demands a trial by jury.

152.    Mr. Stevens' ankle and the nerve within it are permanently damaged by the calcium bridge between the fibula and tibia pictured here:



153.    Mr. Stevens requests all available compensatory and punitive damages for past, present and future pain and suffering, physical, mental, emotional, and economic expenditure, injury and deprivation, as well as pre- and post-judgment interest.  Alternatively, presumed damages should be awarded.

FAC

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

154.    Mr. Stevens requests the foregoing compensatory and punitive damages in an amount ascertained according to proof, the value of his damages to be determined by a jury of his peers.

155.    By expressing a specific form of damages, Mr. Stevens does not exclude or waive any other applicable form of damages as to any claim.

156.    Mr. Stevens reserves the right to move for injunctive or declaratory relief.

157.    Mr. Stevens requests an award of reasonable attorney fees and costs pursuant to 42 U.S.C. §1988, or any other suitable basis, and for such other relief to which he may be justly entitled in the wisdom of the Court.

Respectfully Submitted,

RANDALL STEVENS

By s/ Jackson Millikan
    Jackson Millikan, WSB# 47786
    2540 Kaiser Rd NW
    Olympia, WA 98502
    360.866.3556
    Jackson@MillikanLawFirm.com

FAC

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **29** of **29**