UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANDALL STEVENS,

        Plaintiff,

v.

PIERCE COUNTY, et. al.,

        Defendants.

CASE NO. C22-5862 BHS

ORDER GRANTING IN PART MOTION TO DISMISS

THIS MATTER is before the Court on defendants NaphCare, Inc., Wendy Batchelor, Ashley Chalk, James Githui, Danielle Seymour, and Robert Wargacki's (NaphCare Defendants) Motion to Dismiss, Dkt. 23. Plaintiff Stevens alleges that he was detained and beaten by officers for no reason, and that he received inadequate and unconstitutional medical care while he was detained. He asserts a *Monell* claim against NaphCare based on its alleged policy of providing inadequate medical care to jail inmates to save money. He claims negligent medical care and deliberate indifference caused him to suffer a permanent physical injury while he was incarcerated. Dkt. 17 at ¶ 112-26. Stevens also asserts breach of contract and corporate negligence claims. *Id.* at 25, 26.

ORDER - 1

The NaphCare Defendants argue that Stevens' claims fail as a matter of law because he cannot plausibly allege that Defendants caused his injury. Dkt. 23 at 7-9. They argue Stevens' conclusory allegation that NaphCare has a "profit-motive" fails to state a plausible *Monell* claim. *Id.* at 13.

## I. BACKGROUND

On August 13, 2020, plaintiff Randall Stevens fled from law enforcement officers in his car, resulting in a pursuit which ended in Stevens' backyard. Dkt. 17, 1. Deputy Brent Tulloch arrived at the scene, where he struck Stevens' ankle with a police-issued flashlight during the arrest. *Id.* at 9. Stevens was taken to Bonney Lake Hospital for treatment of his injuries, where an X-ray showed Stevens had suffered a fractured fibula. Dkt. 17 at 9. The Bonney Lake Hospital Emergency Department left instructions for jail medical staff recommending Stevens "see orthopedic service" and faxed Stevens' X-rays to Pierce County jail. Dkt. 17 at 10. Stevens was given a splint and crutches and was discharged to the jail. *Id.*

Stevens was in custody for five days, during which he was not seen by an orthopedic specialist. Dkt. 17, ¶¶ 59-60. He then "bailed out" and was released from custody. *Id.* ¶ 60. Stevens missed his omnibus hearing, his bail was revoked, and he returned to the jail in November 2020. *Id.* ¶ 61. Stevens remained there as a pretrial detainee for the next several months. *Id.* ¶ 84. He ultimately pled guilty to misdemeanor charges and was sentenced to time served in October 2021. *Id.* ¶ 86.

NaphCare, through its employees, provides medical services to Pierce County jails.[1] Dkt. 17, ¶ 7. Stevens alleges that, on his return to the jail, he notified NaphCare employee Nurse Githui that his ankle hurt. *Id.* ¶ 63. Stevens alleges Nurse Githui falsely documented that Stevens had no recent medical hospitalizations and no impaired mobility from injury. *Id.* ¶ 64. Stevens continued to seek medical care, and Nurse Batchelor assessed him and documented that he had a palpable deformity along the fibula, but that he was unwilling to provide previous medical records regarding his leg injury. *Id.* ¶ 67. On February 17, 2021, Batchelor ordered an X-ray of Stevens' leg, but Stevens alleges no X-ray was performed. *Id.* ¶ 71. The next day, Nurse Seymour documented Stevens had refused an X-ray. *Id.* ¶ 72.

On February 24, 2021, the jail X-rayed Stevens' leg. Dkt. 17 ¶ 74. Stevens alleges that Nurse Wargacki falsely made a note indicating Stevens did not want to see a doctor and that he reported already having an orthopedic consult scheduled with his own doctor, outside of the jail. *Id.* ¶ 75. Nurse Chalk documented that Stevens could walk up and down stairs without difficulty and that he refused pain relievers and further treatment for his ankle. *Id.* ¶ 78. On April 10, 2021, Stevens' ankle injury was ultimately examined by an orthopedic doctor, who observed that the fibula fracture had significant callus formation and found osteoarthritis and damage to the saphenous nerve, resulting in permanent injuries. *Id.* ¶¶ 81–82.

---

[1] NaphCare is a private company, but it does not dispute that, in providing medical services to the Pierce County jail, it is a state actor for purposes of Stevens's 42 U.S.C. §1983 claims. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (for private entities, the issue is whether the alleged infringement of federal rights is "fairly attributable" to the government).

In November 2022, Stevens sued Pierce County and the deputies who arrested him. Dkt. 3. Stevens' amended his complaint, adding claims against the NaphCare Defendants. Dkt. 17.

The amended complaint is not a model of clarity. It asserts a 42 U.S.C. § 1983 *Monell* claim against NaphCare, alleging that a policy of NaphCare caused his injury, and it also asserts § 1983 deliberate indifference and medical negligence claims against the individual NaphCare employees, based on the inadequate medical services that he claims flowed directly from NaphCare's policy of prioritizing profit over care. *Id.* at 22.

Stevens also asserts a breach of contract claim against NaphCare. *Id.* ¶ 150. He alleges Pierce County had a contract with NaphCare to provide medical services to its jails, and the terms of the contract necessarily require NaphCare to confer health care services meeting the applicable standards of care. *Id.* ¶ 148. Stevens contends that, as a jail detainee, he was a third-party beneficiary of the contract. *Id.* ¶ 149. He argues NaphCare breached its duty to him to provide acceptable medical care. *Id.*

Stevens' amended complaint also asserts a claim for corporate negligence against defendant NaphCare. *Id.* ¶ 143. He alleges NaphCare had a duty to competently hire, train, and supervise its employees and it breached that duty when its employees denied him care, which led to his permanent injuries. *Id.*

Stevens also asserts a medical negligence claim against the NaphCare Defendants, arguing that they owed a duty consistent with the accepted standard of care pursuant to RCW 7.70.030(1) and that their acts and omissions fell below the standard of care when they falsified his medical records and refused to treat his injury. Dkt. 17, ¶ 138.

Finally, Stevens asserts a § 1983 Fourteenth Amendment deliberate indifference claim against the individual defendant nurses Githui, Batchelor, and Chalk. *Id.* Stevens alleges the individual NaphCare defendants knew or should have known that Stevens' fibula had fractured, that it was not healing properly, and that there was a preventable bone bridge, but they intentionally disregarded it, resulting in permanent injuries. *Id.* Stevens seeks compensatory and punitive damages. *Id.* ¶ 153.

The NaphCare Defendants seek dismissal for failure to state a plausible claim. Dkt. 23. First, they argue that Stevens' breach of contract claim fails because Stevens was not an intended third-party beneficiary of the contract between Pierce County and NaphCare. Dkt. 23, 5. NaphCare argues that the parties must mutually intend for there to be a direct obligation to the intended beneficiary at the time they create the contract. Dkt. 23 at 5; *see Lonsdale v. Chesterfield*, 99 Wn.2d 353, 361 (1983) (the parties' intent to create a third-party contract can be demonstrated by their intent to assume a direct obligation to the beneficiary).

The NaphCare Defendants argue Stevens' corporate negligence claim should be dismissed because Stevens fails to allege any facts supporting the conclusion that NaphCare negligently hired any of the defendant employees. *Id.* at 7.

Defendants argue that Stevens' medical negligence claim against them should be dismissed because they provided care to him *after* the February X-ray, which revealed his permanent injuries, and his factual allegations cannot support the inference that they caused that injury. Dkt. 23 at 8. The NaphCare Defendants also argue that Stevens' deliberate indifference claims against them should be dismissed because Stevens has not

alleged facts to demonstrate any of the nurses' acts or omissions constituted "reckless disregard." *Id.* at 11. Finally, NaphCare argues Stevens' *Monell* claim should be dismissed because it relies on only the conclusory allegation that it had a "widespread and well settled profit-over-care policy," and that this policy caused his injuries. *Id.* at 13.

Stevens responds that a third-party beneficiary exists when parties intend for their performance under their contract to necessarily benefit the third party. Dkt. 24 at 5 (*citing Donald B. Murphy Contractors, Inc. v. King County*, 112 Wn. App. 192 (2002)). Stevens also contends he has pled sufficient facts to support corporate negligence and his claim will be aided by discovery. *Id.* at 10. Stevens argues the facts he alleges for his medical negligence, deliberate indifference, and *Monell* claims, taken as true, are enough to survive a motion to dismiss. *Id.* at 11.

The NaphCare Defendants' reply that Stevens relies on faulty characterizations of unpublished, non-precedential opinions. Dkt. 25 at 10. It also points out that Stevens' argument that they are "in default" is baseless[2] and unavailing and emphasize that their Rule 12(b)(6) motion challenges the factual allegations in his complaint, not the new allegations in his response, and not his evidence. They ask the Court to strike Stevens' assertion that they are in default and his "immaterial, impertinent, and/or scandalous" allegations that "NaphCare is nationally infamous for its poor healthcare." *Id*. at 12. That motion is **GRANTED**.

---

[2] A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss must be filed "before pleading"—before the defendant answers—and filing such a motion is "otherwise defending" for purposes of Rule 55. Defendants are not in default.

ORDER - 6

The remaining issue are addressed in turn.

## II.   DISCUSSION

**A.   Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544).

On a Rule 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not

possibly be cured by the allegation of other facts." *Cook, Perkiss &amp; Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**B.     Stevens' Claims**

**1.     Stevens Fails to Allege a Plausible *Monell* Claim Against NaphCare.**

Stevens alleges NaphCare's profit-over-care policy caused his permanent injuries. Dkt. 17, ¶ 126. To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern, or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). Under *Monell*, a plaintiff must allege: (1) that a municipal employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) that those customs or policies were the "moving force" behind the constitutional right violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691. A municipality may be liable for inadequate training when "such inadequate training can justifiably be said to represent municipal policy" and the resulting harm is a "'highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long v. Cnty. of*

ORDER - 8

*Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409)).

If the policy or custom in question is an unwritten one, a plaintiff must show that it is so "'persistent and widespread'" that it constitutes a "'permanent and well settled'" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

Stevens' amended complaint offers only conclusory allegations regarding the existence of a NaphCare policy or custom. The threadbare allegation that NaphCare focuses on "profit to the detriment of healthcare," Dkt. 17, ¶ 112, is not plausible and it is not enough to support the conclusion that a policy was the moving force behind any constitutional deprivation. Stevens asserts that NaphCare has a practice of falsifying medical records and denying inmates medical care in order to maintain its "rock bottom prices." *Id.* ¶ 114. He makes no factual allegations supporting his claim that NaphCare's falsifying medical records is persistent and widespread or that they are permanent and well-settled. Stevens also does not provide sufficient facts to suggest any other purported instances of such events. NaphCare's motion to dismiss Stevens' *Monell* claim is **GRANTED**, and that claim is **DISMISSED with prejudice**.

**2.     Stevens Fails to Demonstrate He was an Intended Third-Party Beneficiary of the NaphCare/Pierce County Contract.**

Stevens argues he was a third-party beneficiary to the contract which required NaphCare, Inc., to provide medical services to Pierce County jail. Dkt. 17 at 27. Stevens contends NaphCare breached this contract when they failed to provide medical services

ORDER - 9

meeting the accepted standard of care necessarily required by the contract, and that he should be compensated for his expectation interest. *Id.*

Under Washington law, "'[t]he creation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract.'" *Postlewait Const., Inc. v. Great Am. Ins. Companies*, 106 Wn.2d 96, 99 (1986) (quoting *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 361 (1983)). The inquiry focuses on objective criteria and asks "'whether performance under the contract would necessarily and directly benefit'" the third party. *Postlewait Const.*, 106 Wn.2d at 99 (quoting *Lonsdale*, 99 Wn.2d at 362). "An incidental, indirect, or inconsequential benefit to a third party is insufficient to demonstrate an intent to create a contract directly obligating the promisor to perform a duty to a third party." *Kim v. Moffett*, 156 Wn. App. 689, 701 (2010).

"The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue; instead, the parties must have intended to benefit the third party." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012). To prove intended beneficiary status, the third party must show that the contract reflects the express or implied intention of the parties to benefit the third party. *Id.* (quoting *Klamath Water Users Prot. Ass'n v. Patterson*, 204 F.3d 1206, 1211). "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries and may not enforce the contract absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n*, 204 F.3d at 1211, *amended*, 203 F.3d 1175 (9th Cir. 2000).

The clear intent requirement is not satisfied by a showing that the contract operates to the third party's benefit and was entered into with them in mind. *See Orff v. United States*, 358 F.3d 1137, 1147 (9th Cir. 2004). Rather, courts examine the precise language of the contract for a clear intent that the third parties are intended beneficiaries instead of incidental ones. *Id.* at 1147 n.5; *see also Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (explaining that a "more stringent test applies" to government contracts).

While Stevens may have benefited from the contract[3] between Pierce County and NaphCare when he was receiving medical care during his time at the jail, he has a higher threshold to meet in order to demonstrate that the parties to that contract intended to benefit him. He cites no analogous authority[4] holding that a detainee is an intended third-party beneficiary of a contract between the governmental subdivision holding him and the health care providers it hires to provide health care to detainees. Stevens alleges that only the terms of the contract necessarily require NaphCare to confer medical services upon jail detainees, but this is insufficient to meet the standard outlined above. Stevens has pled enough facts to demonstrate only that he, and the other jail inmates, were incidental beneficiaries to the contract.

---

[3] Stevens impugns NaphCare for not placing the contract before the Court in support of its Rule 12(b)(6) motion. Dkt. 24 at 6. But the motion challenges Stevens' allegations, not his evidence. And Stevens could have referenced in his complaint the provisions upon which he apparently relies.

[4] Stevens relies on dicta in a concurrence in an unpublished memorandum disposition, *Dy v. Nale*, 772 Fed. Appx. 558, 560 (9th Cir. 2019) ("Dy may still have a viable state law claim to pursue in California"). Dkt. 24 at 9. This reliance is misplaced. *Dy* is not authority supporting his third-party beneficiary claim.

Furthermore, and in any event, the contractual obligation he seeks to enforce—that NaphCare agreed to and therefore was required to provide to detainees the medical care required by the Constitution and Washington law—is identical to the duties already imposed by the Fourteenth amendment, remediable through § 1983, and by Washington negligence law, remedied in tort. Stevens does not need to enforce a contract term to impose on NaphCare the duty to comply with the Constitution and with Washington law in providing medical care to him.

Stevens has failed to plausibly allege he is an intended third-party beneficiary of Pierce County's contract with NaphCare. The NaphCare Defendants' motion to dismiss Stevens' breach of contract claim is **GRANTED,** and that claim is **DISMISSED with prejudice and without leave to amend**.

### 3. Stevens Fails to Allege a Plausible Corporate Negligence Claim Against NaphCare.

Stevens argues Defendant NaphCare breached its duty to competently hire, train, and supervise its employees, alleging that they intentionally falsified Stevens' medical records, denied him care, and refused to involve an orthopedic specialist. Dkt. 17 at 26.

The doctrine of corporate negligence requires medical services providers to exercise reasonable care to ensure only competent physicians are selected as members of their staff. *See Douglas v. Freeman*, 117 Wash. 2d 242, 248 (1991). The doctrine developed as a means for holding a hospital liable for its own negligence when the physicians who allegedly caused disputed injuries were independent contractors rather than employees, rendering the theory of *respondeat superior* inapplicable. *Pedroza v.*

*Bryant*, 101 Wn.2d 226, 228–30 (1984). Under this doctrine, hospitals have a duty to "select hospital employees with reasonable care and supervise all persons practicing medicine within the hospital walls". *Douglas*, 117 Wn.2d at 248. Corporate negligence claims still require all the essential elements of negligence—breach, injury, proximate cause, and damages. *Id.*

Stevens has not pled and could not plead facts plausibly suggesting that the individual NaphCare defendants were independent contractors, and therefore he cannot allege that the doctrine applies. In any event, like his third-party beneficiary claim, this claim is redundant and unnecessary. NaphCare does not contend that its employees were independent contractors and that, as a result, it is not vicariously liable for their negligence. Stevens' corporate negligence cause of action fails state a claim for relief that is plausible on its face. Accordingly, the NaphCare Defendants' motion to dismiss is **GRANTED** and Stevens' corporate negligence claim is **DISMISSED with prejudice and without leave to amend**.

C.  **Stevens' Claims Against the Individual NaphCare Defendants**

  1.  **Medical Negligence.**

Stevens argues that the individual NaphCare defendants owed him a duty consistent with the accepted standard of care under RCW 7.70.030(1), and that they breached their duty when they disregarded his injury, denied him treatment, and falsified his medical records. *Id.* Stevens alleges that NaphCare is vicariously liable for the negligence of its employees. Dkt. 17 at ¶ 142.

The necessary elements to prove that a plaintiff's injury resulted from the failure of a healthcare provider to follow the accepted standard of care include a showing that (1) the healthcare provider failed to exercise the degree of skill expected of a reasonably prudent healthcare provider at that time, in the state of Washington, acting under similar circumstances, and that (2) this failure was a proximate cause of the plaintiff's injury. *See* RCW 7.70.030–.040. Like the corporate negligence claim, a claim of medical negligence requires a showing of duty, breach, and proximate causation. Mere negligence alone does not give rise to liability, rather, the negligence must have caused the injury. *Dillingham Tug & Barge Corp. v. Collier Carbon & Chem. Corp.*, 707 F.2d 1086, 1092 (9th Cir. 1983).

Stevens' factual allegations plausibly support a claim for medical negligence against defendant Nurse Githui, because he contends Githui saw him in November. Stevens plausibly alleges Githui falsely noted in his medical records that Stevens did not have any recent hospitalizations and he did not have impaired mobility or injuries, even though Stevens alleges he told Githui his ankle was "fractured, severely swollen, and very painful" after he returned to Pierce County Jail in November. Dkt. 17, ¶ 63-64. These events occurred nearly three months before the February 24 X-ray indicating Stevens' fibula callus. *Id.* ¶ 74.

Stevens' allegations of negligence against Nurses Batchelor, Wargacki, Chalk and Seymour, on the other hand, involve care he received on or after the February 24 X-ray. That care could not possibly have caused the injury disclosed in that X-ray. Stevens fails to articulate a logical or plausible theory that those defendants caused his injury or its

permanence. Their motion to dismiss Stevens' medical negligence claim is **GRANTED**, and those claims are **DISMISSED**.

Given the non-specific nature of Stevens' amended complaint and its allegations about defendant Batchelor, it is perhaps conceivable that he could amend his complaint to include a plausible timeline that asserts a medical negligence claim against Batchelor, but his current complaint does not do so. The Court will permit Stevens to file an amended complaint articulating a plausible medical negligence claim against Batchelor. He should do so within 14 days. His medical negligence claim against defendants Wargacki, Chalk and Seymour are **DISMISSED with prejudice and without leave to amend**.

Stevens does allege a plausible medical negligence against Githui, who saw him well prior to the February X-ray.[5] Githui's motion to dismiss Stevens' medical negligence claim against her is **DENIED.**

### 2. Stevens Fails to Allege a Plausible Deliberate Indifference Claim Against the Individual NaphCare Defendants.

Stevens asserts a § 1983 Fourteenth Amendment claim against the NaphCare Defendants, alleging they were deliberately indifferent to his serious medical needs. Dkt. 17 ¶¶ 112–26. Section 1983 provides a remedy for the violation of a person's constitutionally protected rights by "any *person*" acting under color of state law. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (emphasis added). The employee actor—the *person*—who causes a constitutional violation is individually liable

---

[5] It is plausible that, when Githui saw Stevens in November 2020, the fracture was still treatable before the injury became permanent.

to the plaintiff under § 1983. But there is no *respondeat superior* or vicarious liability under § 1983; a municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

Nevertheless, Stevens seems to allege and argue that the individual defendants violated his constitutional rights because they followed NaphCare's "profit above health care" policy. Section 1983 claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). To prove a deliberate indifference claim, a plaintiff must demonstrate: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendants caused the plaintiff's injuries. *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The defendant's conduct must be objectively unreasonable for the third element to be met. *Castro,* 833 F.3d at 1071. This is a fact-specific inquiry. *See id.* The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (internal quotation marks omitted) (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31, (1986)); *see also Estelle v. Gamble*, 429 U.S.

1 | 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely
2 | because the victim is a prisoner."). The plaintiff must "prove more than negligence but
3 | less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at
4 | 1071.

5 |       Stevens contends the NaphCare employees knew or should have known that his
6 | fibula was fractured, that it was healing improperly, and that there was a preventable
7 | bone bridge growing between his tibia and fibula. Stevens alleges they intentionally
8 | refused to assess his fracture, and this led to his permanent injury. Dkt. 17 ¶ 120–21, 126.

9 |       As discussed above, Nurses Wargacki, Chalk, and Seymour could not have been
10 | deliberately indifferent to Stevens' medical needs and they could not have temporally
11 | caused his permanent injury; he does not allege that they saw him before the X-ray
12 | revealed the injury's permanence. Their motion to dismiss is **GRANTED** and Stevens'
13 | deliberate indifference claims against them are **DISMISSED with prejudice and**
14 | **without leave to amend**.

15 |       Stevens does allege that Nurse Githui deliberately falsified his medical records
16 | and denied him care when it was early enough to make a difference, pursuant to
17 | NaphCare's "policy, practice, and custom of focusing on profits to the detriment of health
18 | care." Dkt. 17 ¶ 112–15. And while he has not yet done so, Stevens could conceivably
19 | amend his complaint to plausibly allege that Batchelor was deliberately indifferent to his
20 | serious medical needs in the same time frame (again, his current allegations about her are
21 | vague). Defendants Githui's and Batchelor's motion to dismiss Stevens' § 1983
22 | deliberate indifference claim against them is **GRANTED**, and those claims are

**DISMISSED**. However, the Court will permit Stevens to file an amended complaint articulating a plausible deliberate indifference § 1983 claim against Githui and Batchelor. He must do so within 14 days.

### III. ORDER

Therefore, it is hereby **ORDERED** that NaphCare's Motion to Dismiss, Dkt. 23, is **GRANTED in part and DENIED in part** as follows:

1. The NaphCare Defendants' motion to dismiss Stevens' *Monell*, breach of contract, and corporate negligence claims, is **GRANTED**, and those claims are **DISMISSED with prejudice**.

2. Individual Defendants Wargacki, Chalk and Seymour's motion to dismiss Steven's medical negligence claim and deliberate indifference claim is **GRANTED,** and those claims are **DISMISSED with prejudice**.

3. Individual Defendant Batchelor's motion to dismiss Steven's medical negligence and deliberate indifference claim against her is **GRANTED**, but Stevens may file an amended complaint plausibly alleging that she failed to meet the duty of care, was deliberately indifferent, and caused his injury, within 14 days.

4. Individual Defendant Githui's motion to dismiss Steven's medical negligence claim is **DENIED.** Githui's Motion to Dismiss Stevens' § 1983 deliberate indifference claim is **GRANTED**, but Stevens may file an amended complaint plausibly alleging that she failed to meet the duty of care, was deliberately indifferent, and caused his injury, within 14 days.

5. The NaphCare Defendants' Motion to Strike, Dkt. 25 at 11, is **GRANTED**. Their Motion to Stay Discovery pending the resolution of this motion, Dkt. 27, is **DENIED as moot**.

Dated this 11th day of August, 2023.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge